## GOODWIN v. MORGAN.

1. A title to property derived from a woman not married, is valid, notwithstanding she be living with a man as if married

2. A parol gift of a slave in North Carolina, held good, although there is a statute in that State requiring bills of sale of slaves to be recorded, &c. on the ground that the statute does not operate between parties, and those claiming under them.

PETER MORGAN, jr. declared against George Goodwin, in the Circuit Court of Washington county, in *detinue*, for eleven slaves. The defendant pleaded *non detinet*, a trial was had at November term, 1827, and a verdict found for the plaintiff, for eight of the slaves, upon which a judgement was entered.

Goodwin took a bill of exceptions at the trial, which is as follows:

"It was proved that Peter Morgan, the elder, and Anna Gunter, lived together in North Carolina, and had three children (of whom plaintiff was one) before their marriage, and were privately married while she was pregnant of a fourth child, and continued to live together until his death in 1809, both his and her property continuing under his control; that the negro Rose is the child of a negro woman who was given to Anna Gunter by her father, and the other slaves named in the declaration are the offspring of Rose.

Before said marriage of his mother, and when plaintiff was four or five years old, and Rose a little older, she made a parol gift of Rose to him, in the presence of said Morgan, the elder, of defendant who was his ward, and lived with him, and of Allen and Knight and two other persons ; which persons last mentioned, she requested to to witness what she was about to do, and then took Rose by the hand and placed it in the hand of the plaintiff, saying that she gave her to him as his property forever. Said Morgan, the elder, was then standing by, saw the whole transaction, and said, "I ought to give Peter my boy Bob, as I am as able to give away property as Anna."

Peter Morgan, the elder, died in 1809; and by his last will, appointed the defendant and two other persons his executors, and the defendant and two others, guardians to his children ; directed that his executors should sell enough of his estate to pay all his just debts, and also directed the manner in which his estate should be divided among his wife and four children, bequeathing Rose and her children to the plaintiff, unless his wife should choose them as part of her share.

The defendant proved the will, qualified as executor, and took Rose and her children into his possession. These and all the other negroes were sold by him as executor, to satisfy the debts of the estate, and at the sale he bought Rose and children. In 1812 he finally settled his accounts as executor, and by the settlement it appears that the estate was yet in his debt.

The statute of North Carolina of 1795, which gives to executors and administrators the same powers which were given by the will, and prohibits them from making any other than sales at auction, on six months credit, was proved and read in evidence, as was also a statute of said State as follows :

"And whereas, many persons have been injured by secret deeds of gift to children and others, and for want of formal bills of sale for slaves, and a law perpetuating such gifts and sales ; for remedy whereof, Be it enacted, &c. that from and after the 1st day of June next, (1784) all sales of slaves shall be in writing, attested by at least one credible witness, or otherwise shall not be deemed valid ; and all bills of sales of negroes, and deeds of gift of any estate of whatever nature, shall within nine months after the making thereof, be proved in due form

and recorded, and all bills of sale and deeds of gift, not authenticated and perpetuated in manner as by this act directed, shall be void, and of no force whatsoever ; any law to the contrary notwithstanding "

No bill of sale to the plaintiff was given in evidence.

The defendant requested the Court to charge the jury, that by virtue of said last cited statute, the gift to the plaintiff was void ; and that the gift was void, because when made, Morgan, the elder, and Anna lived together as man and wife.

The Court refused the instructions prayed for, and charged the jury that the gift from Anna Gunter to the plaintiff was valid, inasmuch as he was a minor when it was made ; that the defendant, Goodwin, having been appointed and qualified as executor, acquired no right under the purchase made by him, and was not to be considered as a creditor, or subsequent purchaser : and that the gift to the plaintiff was not void, unless when it was made, there was a general reputation that said Anna Gunter and Morgan, the elder, were married ; to all which the defendant, Goodwin, excepted, &c.

The matters of this bill of exceptions are now assigned here by Goodwin as error.

HITCHCOCK, for the plaintiff in error, cited 12 Wheaton 169.   1 Haywood 289.   N. C. Rep. 191.   2 Starkie 700.   4 John. 204.

BAGBY, for defendant in error.

JUDGE PERRY delivered the opinion of a majority of the Court.

THE refusal of the Court below to give the charge requested, is assigned for error, and it is the only assignment deemed necessary for this Court to determine, as regards the rights of the parties.   It is contended that the cohabitation and living together of Anna Gunter and Peter Morgan, placed them, as regarded her property, in the same situation as if they had been legally married, and that the marriage of Anna Gunter and Peter, subsequent to the gift by Anna to her son, the present defendant in error rendered the gift void, inasmuch as Peter Morgan, the then husband of Anna, must be considered as a subsequent purchaser.   I hold that neither of these propositions are supported by law, for it cannot be denied that the

husband only acquires by marriage the same right in the property of his wife, which she had while a feme sole, and the property thus acquired, is by virtue of the marriage; and he cannot be considered as a purchaser; marriage and purchase being separate and distinct modes of acquiring a title to property. [a] I hold it also to be equally true, that Anna Gunter and Peter Morgan's living together in a state of adultery, did not suspend her legal existence; she was as capable of suing and being sued, and making contracts independent of the person with whom she lived and cohabited, as any other person could be. Were this not the case, persons living in this situation would receive all advantages attendant on a legal marriage, in violation of the best policy of society. Considering Anna Gunter then as a feme sole when the gift was made, is it avoided by the statute of North Carolina? [a] By the authorities here referred to, it will be found that the Courts of that State have uniformly decided, that this act was made for the benefit of creditors only, and that sales and gifts of slaves by parol, were valid under it, as between the parties, when there were neither creditors nor purchasers to be affected by such gift or sale. The same rule prevails at common law. I am then of opinion that the gift made by Anna Gunter to her son, the defendant in error, of the negroes in question, previous to her intermarriage with Peter Morgan, under whom the present plaintiff in error claims, was a good and valid gift, and vested the title to said negroes in the defendant; the plaintiff in error deriving no title to them as a creditor or purchaser from Anna Gunter. I am therefore of opinion, that the Court below did not err in refusing the instruction asked for. Let the judgement therefore be affirmed; and of this opinion, are a majority of the Court.

*JANUARY 1823.*

Goodwin
v.
Morgan.

[a] See Blk. Com. 433.

[a] See page 195, decisions of the Supreme Court of N Carolina, 1822. 1 Hayw's Rep. 289.

## By JUDGE CRENSHAW.

This case involves many important principles which were developed in the arguments of counsel, all of which it might be gratifying to notice; but as they have not all been noticed in the opinion just delivered by the Court, I shall bring to view those only which I conceive necessary to lead to a correct legal conclusion.

A short history of the case is this: "that at the time of the pretended gift, Peter Morgan, the donee, was an in-

36

JANUARY 1828.

Goodwin
v.
Morgan.

fant four or five years of age, and that it was not in writing but verbal, that persons then present were called on to witness the transaction, and the hand of Rose was formally placed into the hand of Peter in token of delivery; that Rose continued in the possession of the donor, until some years afterwards, she intermarried with Peter Morgan, the elder, when said negro passed into his possession, and there continued as his own property until he died; and who by a testamentary disposition, bequeathed Rose and her children to Peter, the donee. After the death of the testator, Goodwin, his executor, took possession of these negroes, together with the rest of his personal estate, and sold the whole for the payment of debts, in pursuance of directions contained in the will; that he purchased these negroes at his own sale, but that the estate was indebted to him in a larger amount than the value of the purchase; that a record of his transactions on the estate, approved and recorded by a competent tribunal in North Carolina, was produced in evidence by the plaintiff below." Other facts were embraced in the case, but these are all which I consider material to the rights of the parties, or to a determination of the matter in controversy.

The first and most important question is, whether this pretended gift from Anna Gunter to her illegitimate son Peter, was a valid alienation of her right of property to the negro girl Rose?

It is laid down in the best authorities, "that at common law, a gift of personal property to be good, must transfer both the right of property and the possession of the chattel, whereby one person renounces and another person immediately acquires all title and interest therein, and which may be done either by writing or by word of mouth, attested by sufficient evidence, of which, delivery of possession is the strongest and most essential, and that a true and proper gift must always be accompanied with possession and must take effect immediately." According to this definition, actual possession must accompany the gift. If the donor continue in possession, or in other words, if the possession be not actually and substantially transferred to the donee, or to some person for his use and benefit, the gift wants what the learned commentator considers its most essential ingredient, and would be absolutely void.

In the case at bar, did Anna Gunter actually part with

the possession of Rose? After the childish farce of placing the hand of the negro child into that of her own child, did she exercise less authority and ownership over the property than she did before, or did she for a single moment divest herself of the possession? Was the transaction stamped with these circumstances of solemnity which the law requires to give it validity? And are such secret family donations at a remote period, when the property has passed into the hands of other persons, and this too, resting on the fading memory of man, to receive the countenance and sanction of a revising Court? Before I can yield my assent to the affirmative of these propositions, I for one must at least pause and hesitate. If then, the gift be void, the right of property in the girl Rose, vested in Morgan, the elder, on his intermarriage with Anna Gunter; and on his death passed into the possession of Goodwin, his executor, as a legacy to Morgan, the younger, but liable with the rest of the testator's estate, to the payment of debts in the first instance. Hence, the well settled rule, that a legatee cannot maintain an action for his legacy in a court of law, unless the executor has assented to the legacy, but that his remedy is by bill in Chancery. If this view of the subject be correct, it is immaterial whether Goodwin's purchase of Rose and her children at his own sale was good or bad; if bad, the property rested where it did before the sale, in his own possession for the benefit of the estate. But I hold that an executor or trustee, where they have the right to sell, may purchase to the extent of their interest in the estate; and that if the sale be fair and *bona fide*, they shall be protected to that extent. In the present case, the executor had a right derived from the law, as well as from the will, to sell the whole of the testator's personal estate, if necessary for the payment of debts. That the sale was fraudulent and not fair and *bona fide*, is not to be presumed without evidence. It cannot be inferred from the record of the proceedings of the executor in his administration on the estate, because that record was produced in testimony by Morgan himself, and is at least *prima facie* evidence of the facts which it purports on its face to shew, because *it is the* record of a court of competent jurisdiction, not reversed or set aside, and shews that the proceedings of the executor have been examined and approved by the proper tribunal; and because it shews that the estate was indebted

JANUARY 1828, to the executor in an amount exceeding the value of his purchase, and that the whole of the personal estate has been sold for the payment of debts.

Goodwin
v.
Morgan.

For these and many other reasons which I have not had time to express in writing, I think the judgement should be reversed and the cause remanded.

Judgement affirmed.